PAUL SCHROEDER v. ROLLA WELLS, Receiver of United Railways Company, Appellant.

Division One, October 9, 1925.

1. **APPELLATE PRACTICE: New Trial Granted: Erroneous Instructions: Abandonment: Assignments Considered.** The petition alleged numerous acts of negligence, and defendant pleaded acts of contributory negligence, and at the close of the case offered a demurrer to the evidence, which was overruled. The case was submitted to the jury upon the humanitarian doctrine alone. The verdict was for defendant, and the plaintiff's motion for a new trial challenged every instruction given for defendant as erroneous. The motion was sustained on the ground that the court erred "in giving improper and erroneous instructions at the instance and request of defendant." On appeal defendant makes no attempt to justify his instructions given, but assigns error only in the refusal of the court to give his demurrer to the evidence offered at the close of plaintiff's case and renewed at the close of the whole case. *Held,* that appellant's brief is on its face a confession of error in the instructions given for him, and the opinion must be confined to the single matter assigned as error.

2. **NEGLIGENCE: Demurrer to Evidence: Facts Considered.** On an appeal by defendant, assigning as the only ground of error the court's failure to sustain his demurrer to the evidence, facts upon

Schroeder v. Wells.

plaintiff's side of the case are of prime importance, and countervailing facts in behalf of defendant lend no light to the single issue raised by the single assignment.

3.  ————: Demurrer to Evidence: Submission of Case on Humanitarian Doctrine: Waiver of All Other Negligence. Because plaintiff finally submitted his case to the jury upon the humanitarian doctrine, it does not follow that he thereby waived other grounds of negligence, nor does it follow that if there was no evidence to show negligence under that doctrine it was error to refuse defendant's demurrer to the evidence.

4.  ————: ————: ————: ————: Status of Case At and After Demurrer Overruled. Whether the trial court erred in overruling a demurrer to the evidence must be determined by the evidence received at the time it was overruled, and not by the instructions subsequently given. The rule is that plaintiff, having asked and obtained a submission of his case to the jury upon the humanitarian doctrine, cannot complain, after the submission, of the failure of the court to give instructions on other alleged grounds of negligence; but a demurrer to the evidence is filed and overruled before the final submission of the case, and if at that time there was evidence upon other grounds of negligence, excluding the humanitarian rule, upon which plaintiff made a case for the jury, the demurrer is properly overruled, and no subsequent conduct of the parties can place the trial court in error in the matter of overruling the demurrer. The fact that plaintiff asked and obtained an instruction asking that the case be submitted to the jury upon the humanitarian doctrine, after the demurrer to the evidence was overruled, is not to be considered a waiver or an abandonment of other grounds of negligence alleged and proved, nor as an admission that the demurrer was erroneously overruled.

5.  ————: ————: Automobile Crossing Track in Middle of Block: Excessive Speed of Street Car. Where the evidence shows that the automobile, in which plaintiff was traveling and which was attempting to cross a street car track, in the middle of a block, for the purpose of parking on the opposite side, was within two feet of a place of safety at the time it was struck by a street car, and that the accident would not have occurred had the street car been running at the maximum ordinance speed of fifteen miles an hour, but that it was running at a speed of thirty-five miles an hour when the automobile attempting to cross the track could have been plainly seen for 350 feet had the motorman observed the ordinance requiring him to keep a vigilant watch for obstructions on the track, and the evidence does not indicate such negligence on the part of plaintiff or the driver as would preclude plaintiff from re-

covering for his personal injuries on the ground of contributory negligence as a matter of law, the trial court did not err in overruling a demurrer to the evidence, but the case was clearly one for the jury. Nor did plaintiff abandon his right to recover on such negligence alleged and proved, by asking an instruction submitting his case to the jury on the humanitarian doctrine.

6. ———: ———: ———: **Vigilant Watch: All Parts of Track: Humanitarian Rule.** The Vigilant-Watch Ordinance, requiring motormen of street cars to keep a vigilant watch for persons and vehicles on or approaching the track and to stop the car on the first approach of danger in the shortest time and space possible, applies to all portions of the track, and is not confined to public crossings; and from it the law implies that a motorman saw an automobile attempting to cross the track in the middle of a block, when he could have seen it for 350 feet, whether or not he saw it or looked to see it, and the company cannot hide behind the claim that he did not see it, when to look was to see it; and if without looking or seeing the automobile attempting to cross the track, and without attempting to stop his car, he continued to run the car at the rate of thirty-five mile an hour until the automobile was struck, the injured occupants are entitled to have their case submitted to the jury on the humanitarian doctrine, even though they were guilty of contributory negligence.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 2578, p. 678, n. 30; Section 2708, p. 764, n. 76; Section 2816, p. 834, n. 64. Negligence, 29 Cyc., p. 530, n. 15; p. 531, n. 21. Street Railroads, 36 Cyc., p. 1477, n. 9; p. 1566, n. 4; p. 1615, n. 87; p. 1618, n. 7; p. 1619, n. 9; p. 1622, n. 26. Trial, 38 Cyc., p. 1636, n. 24.

Appeal from St. Louis City Circuit Court.—*Hon. George E. Mix,* Judge.

AFFIRMED.

*Charles W. Bates, T. E. Francis* and *John F. Evans* for appellant.

(1) The trial court erred in granting plaintiff a new trial for the reason that plaintiff failed to make a case for the jury and defendant's instructions in the nature of demurrers to the evidence, offered at the close of plaintiff's case and at the close of the whole case, re-

spectively, should have been given.  (a)  The testimony demonstrates that plaintiff was guilty of contributory negligence as a matter of law, which would bar recovery upon every theory of primary negligence.  Friedman v. U. Rys. Co., 293 Mo. 235; Leapard v. Rys. Co., 214 S. W. 268; Sorrell v. Payne, 247 S. W. 462; Fechley v. Traction Co., 119 Mo. App. 358, Annotation, 18 A. L. R. 339 et seq.  (b)  By submitting his case solely on the humanitarian or last-chance theory of recovery, plaintiff abandoned all other assignments of negligence contained in the amended petition.  Carl v. Ry. Co., 258 S. W. 75; Penney v. Stockyards Co., 111 S. W. 79; Welland v. Met. St. Ry. Co., 144 Mo. App. 211; Winkler v. Rys. Co., 229 S. W. 229; Sweet v. Bunn, 195 Mo. App. 502.  (c) There is no competent or substantial evidence to support a verdict based upon the humanitarian or last-chance theory.  Roseman v. U. Rys. Co., 251 S. W. 104; Petty v. Railroad, 179 Mo. 677; Markowitz v. Railroad, 186 Mo. 359; Roenfeldt v. Railway, 180 Mo. 567; Guyer v. Railroad, 174 Mo. 351; Fleming v. Railroad, 263 Mo. 180.

*Rassieur, Kammerer & Rassieur* and *Mark D. Eagleton* for respondent.

(1)  All of defendant's instructions pertaining to contributory negligence were improper and had no place in the case submitted solely on the humanitarian doctrine. The trial court, therefore, properly sustained plaintiff's motion for new trial on acount of the errors contained in the instructions.  Ellis v. Met. St. Ry. Co., 234 Mo. 657; Bona v. Leuhrman, 243 S. W. 386.  (2)  The plaintiff was not guilty of contributory negligence as a matter of law.  Mason v. United Rys. Co., 246 S. W. 318; Lackey v. United Rys. Co., 231 S. W. 956.  (3)  In passing upon whether or not the trial court erred in overruling the demurrer to the evidence at the close of all the evidence this court will consider the ruling of the

trial court at the time of demurrer, and is not concerned with later instructions submitting the case to the jury. These instructions in no way aid the court in determining whether or not a demurrer should have been sustained. Irrespective of what theory the case was finally submitted to the jury, in passing upon the demurrer to the evidence this court is concerned with whether or not the plaintiff made any case to go to the jury upon any theory whatever. Eversole v. Railroad, 249 Mo. 542. (4) The evidence was sufficient to support a verdict under the humanitarian doctrine. Hart v. Ry. Co., 264 S. W. 907; Hill v. Ry. Co., 236 S. W. 208.

GRAVES, J.—Action for personal injuries. Upon a trial *nisi,* the defendant had a verdict from the jury. Motion was filed by plaintiff asking for a new trial, and this motion was sustained and a new trial granted. From such order the defendant takes this appeal. The pleadings are thus tersely outlined by appellant:

"The amended petition counts upon the following assignments of negligence: (1) negligent failure to keep a vigilant watch and stop the car in the shortest time and space possible, in violation of the ordinance; (2) negligent operation of the car at a high, excessive, dangerous and unreasonable rate of speed under the circumstances; (3) negligent operation at a speed in excess of fifteen miles per hour, in violation of the ordinance; (4) negligent failure to stop the car, slacken its speed, or give warning of its approach after the motorman saw, or by the exercise of ordinary care could have seen plaintiff in a position of danger; and (5) negligent failure to give warning of the approach of the car.

"The answer consisted of a general denial coupled with affirmative defenses as follows: (1) Carelessness and negligence on the part of plaintiff in allowing and permitting himself to be driven toward a street railway track and immediately in front of and in close and dangerous proximity to an approaching street car when he

saw and heard, or by the exercise of ordinary care could have seen and heard, the approaching car in time to have warned the driver of the automobile and thereby have avoided the collision; (2) carelessness and negligence in failing to warn the driver of the automobile and in allowing her to turn said automobile in the middle of the block without giving warning of her intention so to do, in violation of Section 1274, Revised Code of St. Louis for 1914; (3) carelessness and negligence in knowingly allowing and permitting the automobile to be turned to the left in the middle of a block and to be there driven immediately in front of and in close and dangerous proximity to an approaching street car.

"The reply was in the conventional form of general denial."

The sole assignment of error reads:

"Said court erred for the reasons set out in Point I of Points and Authorities in sustaining plaintiff's motion for new trial and in ordering a new trial in said cause."

To make this assignment complete, we quote Point I in the brief, which is as follows:

"The trial court erred in granting plaintiff a new trial for the reason that plaintiff failed to make a case for the jury and defendant's instructions in the nature of demurrers to the evidence, offered at the close of plaintiff's case and at the close of the whole case, respectively, should have been given."

We then have subdivisions A, B, and C of Point 1, quoted, supra, which are the detailed reasons as to why the demurrer to the evidence should have been sustained. These subdivisions or reasons, excluding the authorities cited, are in this language:

"(a)   The testimony demonstrates that plaintiff was guilty of contributory negligence as a matter of law, which would bar recovery upon every theory of primary negligence.

"(b)   By submitting his case solely on the humanitarian or last-chance theory of recovery, plaintiff abandoned all other assignments of negligence contained in the amended petition.

"(c)   There is no competent or substantial evidence to support a verdict based upon the humanitarian or last-chance theory."

The record shows that the trial court sustained the motion for new trial on the fifth ground thereof, which reads:

"Fifth.   The court, at the instance and request of defendant, and over the objection of plaintiff, erred in giving improper and erroneous instructions to the jury."

There were some ten assigned grounds for a new trial in the motion of plaintiff, including some three others which challenged the giving of each and every instruction for defendant, singling them out by number, and charging inconsistent instructions.   In the brief here, learned counsel for appellant make no attempt to justify their instructions given, but press only the one matter, i. e. that their demurrer to the evidence (offered at the close of plaintiff's case, and re-offered at the close of the whole case) should have been sustained.   It should be said here that after the court overruled the demurrer to the evidence at the close of the whole case, the plaintiff's case was submitted to the jury upon the humanitarian doctrine only.   The brief of appellant upon its face is a confession of error in the instructions given for appellant in the trial.   This because no defense is made of such instructions.   In such situation, we must, and shall, confine this opinion to the single matter assigned as error.   This is a general outline of the conduct of the trial, and we leave to the other paragraphs the evidential facts, and the legal questions involved.

I.   The facts of this case are simple, although those for plaintiff and those for defendant are not (upon sev-

eral vital matters) in accord. We are now dealing with a demurrer to the evidence and, for that reason, the facts upon the plaintiff's side of the case are the ones of prime importance. Countervailing facts in behalf of defendant lend no light upon the single issue raised upon this appeal.

*Facts Considered.*

Plaintiff and his wife were joint owners and users of a Dodge touring car, or automobile. At about 5:45 P. M. of April 23, 1919, they were in this car traveling west on Arsenal Street in the city of St. Louis. The wife was driving, and the car was within a few feet of the north curb of such street. The street runs east and west and near the center therof the defendant maintained and operated a double-track street railway. Street cars going west went upon the north track, and those going east used the south track. A stipulation in the record gives the distance and measurements. This stipulation is as follows:

"The appellant having, through oversight, overlooked the printing of Plaintiff's Exhibit B, a plat offered and introduced in evidence showing the measurements between curbs and the respective rails and tracks on Arsenal Street, stipulates and agrees with the respondent, through their respective attorneys, that said plat was offered in evidence and considered by the jury and showed the exact measurements between the north and south curb of Arsenal Street and the space between the rails and tracks laid in the center of said Arsenal Street, and that there was a space of fifteen feet between the north rail of the west-bound track and the south rail of the east-bound track, and that the space between each of the rails was approximately five feet, making five feet between the north and south rails of the west-bound track, five feet between the north and south rails of the east-bound track and five feet between the two sets of tracks, and that these measurements may be considered as a part of the record the same as if duly and regularly abstracted."

While driving west the automobile was about eight feet from the north curb of the street. At or near No. 4036 Arsenal Street, the driver turned to the south for the purpose of heading her automobile east and parking against the south curb of the street in front of No. 4036. In making this turn (which was not at a street intersection) the automobile had practically cleared both tracks when the rear portion of the machine was struck by a rapidly moving east-bound car, then being operated by defendant. As indication of its speed (and in addition to other evidence as to that fact) the street car ran 200 feet before it could be stopped after the collision. Two or three feet more would have placed the automobile across the south railway tracks, and into a place of safety. Estimates as to the speed of the automobile ranged from five to eight miles per hour. Plaintiff's witnesses placed the rate of speed of the street car at from thirty to thirty-five miles per hour, and we are entitled to consider the latter speed upon this demurrer. Defendant's evidence (not material upon the one issue before us) placed the street car speed at twelve or fifteen miles per hour. The ordinance speed limit (for street cars) at this place was fifteen miles per hour. West of the point of accident was a regular stopping place for passengers to alight from and board the street cars. At this time there were parties at this stopping place to take the street car which collided with the automobile. Plaintiff testified that he saw these parties awaiting the car, and saw the car coming from the west, when some 350 feet from the automobile, but did not at that time discover its rapid rate of speed; that such was the distance of the car when his wife started to make the turn to the south to cross the street; that the street car was then west of the stopping place where the waiting passengers were standing; that the car passed the stopping place without stopping and without decreasing its speed; that he did not discover the great speed of the car until it was right on them, and until the automobile was

on the south street-car tracks; that the driver then did all that could be done in pushing forward in order to clear the track and thus obviate the pending crisis.

According to other witnesses a very similar situation is shown. The day was clear and bright, the tracks dry, and nothing is shown which could have precluded the seeing of plaintiff, his wife and the automobile from the instant it turned south to cross the tracks. These are the material facts, taking the most favorable evidence on plaintiff's side, as we must in determining a demurrer to the evidence. If further detail of facts are necessary, they will be noted in connection with the legal phases of the case.

II. It will be noticed that learned counsel for the defendant stress the fact that, because counsel for plaintiff finally submitted his case upon the humanitarian rule,

**Humanitarian Rule: Waiver of Other Negligence.** he thereby waived the other grounds of negligence, and if there was not evidence to show negligence under the humanitarian rule, then there was error upon the part of the court in refusing the demurrer to the evidence. This does not follow by any means. It is true, that after such a submission, the plaintiff cannot complain of the failure of the court to give instructions upon other alleged grounds of negligence. And this, because he has, in the submission, waived the other grounds of negligence. Such is the substance of cases cited by appellant. They are not applicable to the situation here. The record shows that upon the close of the evidence, the demurrer to the evidence was filed and overruled. This (as is usual in all cases) was before the final submission of the case. The trial court is entitled to some consideration, and if at the time the demurrer was submitted, there was evidence upon any other ground of negligence, excluding the humanitarian rule, upon which the plaintiff made a case for the jury, the demurrer was properly overruled, and no subsequent conduct of the parties can throw the

trial court in error in the matter of refusing the demur-
rer. In other words the action of the trial court must
be judged by the record as it stood when the demurrer
was overruled. If the record then justified the action
of the court, no subsequent action of the parties can make
that error, which was not error at the time the ruling
was made. The mere rule of law, to the effect that
plaintiff will be deemed to have abandoned other grounds
of negligence, and cannot himself complain of the fact
that the court failed to instruct thereon, does not cast the
court into error, if the demurrer was properly overruled,
when the ruling was made. To determine this question
we take the record at the time of the ruling. At such
time there had been no abandonment of any of the al-
leged grounds of negligence. It would be unfair to the
trial court to apply another rule, as we are urged to
do in this case. The question is novel, in the sense that
it has never been exactly presented as here presented.
No case cited by appellant discusses this exact question.
A. somewhat similar thought was expressed in Eversole
v. Railroad, 249 Mo. l. c. 542, when we said:

"It is apparent, as in the preceding paragraph indi-
cated, that there was no situation which would justify
the action of the plaintiff upon the theory that human
life or limb was in imminent peril. It requires more
than mere suspicion that accident might follow to justify
the invocation of the doctrine of 'imminent peril.' For
this reason we held as above indicated that the instruc-
tions given beyond the substantial evidence of the case
should have never been given. But does it follow from
this that the demurrer to the evidence should have been
sustained? In other words, does it follow that no case
was made under the proof and pleading? If a case is
submitted to a jury by instruction upon a theory not
sustained by the evidence, we are required to reverse
the judgment based upon the erroneous action, but it
does not follow that we must say that there is no theory
upon which the plaintiff might recover under his plead-

ings and proof. So in this case we cannot allow the present verdict to stand, because the theory predicated in the instruction is not sustained by the proof, but it does not follow that we must say that there was or was not a case made. Whether there was or not a case made upon any theory of the petition, depends upon a consideration of this pleading, as well as the evidence introduced."

But aside from what was said, supra, the reason of the law would not permit us to convict a trial court of error in overruling a demurrer to the evidence, if there had been a case made upon any theory of negligence pleaded and proven. And this, too, although the plaintiff might not thereafter ask instructions upon all the theories of negligence pleaded and proved.

In the instant case there is ample evidence to take the case to the jury upon the alleged excessive speed. The jury could well have concluded that such was the proximate cause of the injury. The plaintiff, when struck, was within two feet of a place of safety. Had the car been running at fifteen miles per hour (the ordinance limit of speed) the accident would never have occurred. Nor does the evidence indicate such contributory negligence upon the part of either plaintiff or his wife as would preclude the plaintiff upon the ground of contributory negligence as a matter of law. We have set out the facts. From them it is clear that neither plaintiff nor the wife could be adjudged guilty of contributory negligence as a matter of law. Whether either was negligent would be a question for a jury upon proper instructions. In addition, when the trial court ruled upon the demurrer the charge of violating the St. Louis Vigilant-Watch Ordinance was not an abandoned charge of negligence, and there was evidence tending to show that the agents operating this car could have seen the automobile in the act of crossing the double tracks more than three hundred feet away, had such employees been keeping a vigilant watch for persons or vehicles on the tracks or approaching the tracks. We need not set out this

ordinance. Its terms are familiar faces to every member of this court. It was a clear day, a dry track, and no intervening obstacles. Yet, according to the evidence, the street car proceeded at thirty-five miles per hour, passing up passengers, and no attempt to even slacken speed. The demurrer was well ruled, without considering the humanitarian rule. These matters alone would suffice to affirm the order granting a new trial.

III. We are not prepared to say that the evidence does not make a case under the humanitarian rule. Contributory negligence is no defense to this peculiar kind of negligence. Under the law (Vigilant-Watch Ordinance) the duty was imposed upon the agents of the defendant to be upon the lookout for persons or vehicles upon or approaching the tracks. The ordinance was in evidence, as also was the speed ordinance. Not only was there a duty to be upon the lookout, but there was the further duty to stop the car "in the shortest time and space possible." This duty is and was a continuous duty, and the ordinance law applies to all portions of the tracks. That is to say, the duty is not confined to public crossings. This is mentioned, not for the purpose of elaborating upon the alleged ordinance negligence, but to show that there was room for the humanitarian rule, under the facts shown. If (as we have ruled) there was a legal duty for the agents of the defendant to be upon a constant lookout for persons or vehicles upon or approaching the tracks, then the defendant (not having the right to expect a clear track) cannot hide behind the claim that his agents did not see the automobile in time to avert the accident. [Degonia v. Railroad, Paragraph II, 224 Mo. 1. c. 586 et seq.]

Where there is an imposed duty to look, and looking was to see (as is true in the instant case), then the law says the agents did see the approaching vehicle, whether in fact they saw it or not. In other words, the law makes them see it, at just such point from which

they could have seen it, had the servants been in the exercise of the care prescribed by the ordinance. Under the facts these agents of the defendant could have seen the automobile as it turned toward the south, when their street car was 350 or more feet away. Under the humanitarian rule the conduct of these agents must be measured from the point where they could have seen the turning car, had they been looking. This because they had no legal right to expect a clear track. So, under this point, we may concede the contributory negligence of both plaintiff and his wife (which we do not concede, but rule that it was at least a question for the jury) and yet the rule of humanity demanded of these agents that they do something to avert the injury. There is much evidence tending to show that they did nothing. Such is the situation, taking for the facts, as we must, the most favorable evidence for the plaintiff. We therefore rule that this overruling of the demurrer was well enough, even under the humanitarian rule. The ruling in the second paragraph of this opinion sufficed for the affirmance of the order granting a new trial, but as this case is to be retried, this discussion of the law of the case is not out of place.

The order granting the new trial should be affirmed, and the cause remanded to the end that there may be a new trial thereof. It is so ordered. All concur, except *Woodson, J.,* absent.