## GRAND-MORGAN THEATRE CO. v. KEARNEY.

### No. 8649.

Circuit Court of Appeals, Eighth Circuit.

March 20, 1930.

Ralph T. Finley, of St. Louis, Mo. (James C. Jones, Lon O. Hocker, Frank H. Sullivan, and James C. Jones, Jr., all of St. Louis, Mo., on the brief), for appellant.

J. M. Feigenbaum, of St. Louis, Mo., for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

Appellee, George H. Kearney, hereinafter referred to as plaintiff, attended a cine-

matographic show in a theater owned by Grand-Morgan Theatre Company, appellant, hereinafter referred to as defendant. While going down one of the aisles in the balcony, he fell and received the injuries resulting in the damage sought to be recovered in this suit.

His story, as told on the witness stand, is that he went up to the balcony, stood there a minute or two so as to try and accustom his eyes to the darkness, and, as no usher was there, decided to walk over and look for a seat. He was not able to see anything clearly, the steps and seats were more or less of an outline, but noticed there were quite a few empty seats. The pictures were being shown, and the house was comparatively dark, and he had noticed that in some of the theatres there was more light.

On the second step he caught his right foot on the carpet and fell. After his fall he went back and examined the step, and discerned that the carpet was crumpled up to the edge; that there was a rise there of approximately an inch, and probably an inch and a half or two inches back from the front edge of the step, and that this condition went nearly all the way across the step; that it was either padding under the carpet that had become wadded up or the carpet had become loose. His first step was with his left foot and the second with the right foot, and his heel caught in the carpet and threw him forward.

At certain places there was sort of a green light along the seats; a very dim light that cast a light but a short distance almost directly under the seats. There was no light at all reflected on the step, and he could not see the unevenness of the carpet. It was approximately two minutes after he fell until an usher came up.

He had been to the theater before, and knew where to go, but on the previous occasions he had always been led down to his seat by an usher who carried a flashlight and walked ahead of him holding the light.

The story of plaintiff is corroborated to some extent by his son.

The defendant's witnesses, consisting of the chief electrical maintenance man and engineer, together with the usher who was on duty at the time the plaintiff fell, testified that regular inspections were made of the carpet and the lights in the theater and at the place where plaintiff fell, and that there was no roll in the carpet, but that it was smooth and in good condition. Also that the lights were in good condition, and were bright enough to not only show the steps, but to enable one to see the figures in the carpet.

█ The plaintiff's declaration sets out specific grounds of negligence as follows:

(1) Plaintiff states that defendant carelessly and negligently permitted the left aisle of said balcony to remain without sufficient light to guide patrons down said aisle or enable them to clearly see the steps thereof, and by reason thereof plaintiff was unable to see the knotty condition of the carpet on one of the steps of said aisle, and his right foot was caught on the edge of said step and plaintiff injured as aforesaid.

(2) For another and further assignment of negligence against defendant, plaintiff states that defendant knew, or, by the exercise of ordinary care, could have known, that one of the steps of the left aisle of the balcony of said theater was dangerous for use by the patrons entering same, and in the dark and insufficiently lighted condition of said balcony, without the direction or assistance of some usher directing the way with a flashlight for such patrons, including this plaintiff, but that defendant carelessly and negligently failed to have an usher on said side of the balcony to direct this plaintiff to his seat, and by reason thereof plaintiff's right foot was caused to be caught by the edge of one of the steps of said aisle and plaintiff to be injured as aforesaid.

It is readily perceived that it was the thought of the pleader to charge the defendant with negligence in having a defective carpet and failing to furnish sufficient light that would enable patrons of the theatre to see and observe this dangerous condition.

The court, however, in submitting the issues, made no reference to the condition of the carpet, and stated the grounds of negligence submitted to the jury as follows: (1) "That the defendant negligently permitted the left side of the balcony of the theatre to remain without sufficient light to guide patrons down said aisle and to enable them to clearly see the steps thereof;" and (2) "that the defendant failed to have an usher on said aisle of the balcony to direct this plaintiff to his seat, and that by reason thereof plaintiff's foot was caused to be caught on the edge of the steps of said aisle and plaintiff injured."

Nowhere in the instructions was the question of a defect in the carpet mentioned.

The first ground of negligence submitted by the court to the jury eliminated the element of plaintiff's inability to see a knotty

condition of the carpet on the steps which, according to his story, caused him to fall. And the second ground of negligence eliminated the charge that defendant knew, or should have known, that in the dark and insufficiently lighted condition of the balcony, without an usher to direct the way with a flashlight, there was a dangerous step which caused the plaintiff to trip and fall.

The evidence discloses an issue on the fact question of whether the carpet was in good condition. The court therefore not only submitted issues at variance with the pleadings, but deprived the defendant of its defense that the carpet was not rolled up, but was flat and tight and in good condition.

■ It is a fundamental rule of law that, where the declaration alleges specific acts of negligence, the court must charge on the specific acts and confine the issues to them. Hines v. Jasko (C. C. A.) 266 F. 336; Cavoretto v. Alaska Gastineau Mining Co. (C. C. A.) 245 F. 853.

While not as apt as they might be, the exceptions to the instructions fairly raised the objection that the instructions did not define the duties devolving upon the owner of the theater with reference to the amount of light and the number of ushers required, and that no rule defining the standard of care required of defendant was given to the jury to enable it to pass upon the question of fact.

■ The plaintiff entered the theater as a patron and invitee, and it was the duty of the defendant to construct and maintain the premises in a reasonably safe and suitable condition for the protection of patrons.

■ In general, the duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden defects. Volume 45, C. J. 837.

■ It is also a general rule that, in order to impose liability for an injury to invitee by reason of the dangerous condition of the premises, the condition must have been known to the owner or occupant or have existed for such time that it was the duty of the owner to know of it. Volume 45, C. J. 837; Bennett v. Louisville & N. Ry. Co., 102 U. S. 577, 26 L. Ed. 235.

So it has been held that a storekeeper is not liable to a customer injured by tripping on a worn carpet unless he knew, or should have known, of the defective condition in time to have repaired it or to have warned the customer. Kaufman Dept. Stores, Inc. v. Cranston (C. C. A.) 258 F. 917.

We are satisfied the grounds of negligence that the court submitted do not alone constitute negligence, or are so broad and general as to permit the jury to mentally wander in the realm of speculation.

Whether there was sufficient light, alone, or whether there were ushers, or a sufficient number of ushers in attendance, standing alone, would not constitute negligence. These might be contributing factors, or, under all the facts and circumstances, might be elements, together with other conditions, that might constitute negligence.

The question here is not whether the theater was dark, nor whether there were ushers present to assist plaintiff to his seat, as these facts and circumstances were known alike to the defendant and the plaintiff, but whether the defendant had the premises in a reasonably safe and suitable condition to protect patrons against injury.

A statement made by Judge Van Valkenburgh in Cudahy Packing Co. v. Luyben (C. C. A.) 9 F.(2d) 32, 34, is here in point:

"The assignments of negligence present the issue of whether this construction of the runway was negligent, and whether the light, under such circumstances, was reasonably sufficient to protect one entering the shed in this manner. Standing alone, perhaps, neither construction nor absence of light would in itself be sufficient. The question is whether the position of this runway, obviously a menace to a switchman upon the roof of a car, was dangerous, in the absence of the light there provided, and whether the combination of that dangerous construction and inadequate lighting disclosed negligence on the part of plaintiff in error."

The standard of care required of the defendant given to the jury by the court was as follows: "The owner of a theatre, like the owner of every other sort of business, or most other sorts of business, is obligated to exercise ordinary care for the safety of people who visit the theatre, and a patron who goes to the theatre is under the same duty to exercise ordinary care for his own safety;" and: "The duty was upon this defendant in carrying on the business in which it was engaged to exercise such a degree of care for the safety of its patrons as the ordinary person engaged in the same line of business would exercise in that business."

The standard of care, therefore, given by the court to the jury, was somewhat different from the rule above cited.

Holding then, as we do, that the instructions failed to confine the issues to the spe-

cific acts of negligence charged by the plaintiff in his declaration, and that they did not correctly define the duties of the defendant in the premises, and withheld from the jury the right of the defendant to have adjudged the question of whether the carpet was in a safe condition, a reversal in this case is required.

We do not pass upon the question of whether defendant's motion at the close of all the evidence for a directed verdict in its favor should have been sustained. On review, the appellate court cannot render or direct a final judgment where the parties are entitled to a jury trial. Slocum v. Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879.

The case is reversed and remanded.